**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Nobie M. Thomas, | ) | No. CV-09-02121-PHX-JAT |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) | |
| Standard Insurance Company, a licensed insurer, a foreign corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court is Plaintiff's Motion to Remand (Doc. #11). Defendant filed a Response (Doc. #13) and Plaintiff filed a Reply (Doc. #14). After reviewing the parties' filings, the Court concludes that it does have subject matter jurisdiction over these proceedings and hereby denies Plaintiff's Motion.

**I. Background**

Plaintiff Nobie M. Thomas was an employee of the State of Arizona when she began suffering from a spinal condition. Plaintiff filed a disability insurance claim with Defendant Standard Insurance Company on July 8, 2005. Plaintiff began receiving long-term disability benefits in January 2006. Plaintiff alleges that, following a reevaluation of her Benefits, Standard stopped making disability Payments to her in May 2009. Plaintiff further alleges that her disability is continuing and that Defendant is in breach of contract for denying her continued benefits. In response, Defendant contends that Plaintiff is no longer disabled and thus not entitled to further benefits.

On September 9, 2009, Plaintiff commenced this action in Maricopa County Superior Court. (Doc. #1, Ex. 1 Complaint). In her Complaint, Plaintiff alleges breach of contract and breach of good faith and fair dealing (bad faith). *Id.* Plaintiff seeks actual and compensatory damages, as well as punitive damages, costs, and attorney's fees. *Id.*

On October 8, 2009, Defendant removed the case to this Court based on diversity jurisdiction. (Doc. #1). Plaintiff timely filed a motion to remand claiming that this Court lacks subject matter jurisdiction because Defendant has not provided sufficient evidence to establish that the amount in controversy exceeds $75,000. (Doc. #11). Defendant argues that the minimum amount in controversy is met through Plaintiff's claim for actual damages, attorney's fees and/or punitive damages (Doc. #13).

**II. Legal Standards**

"[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1)**.** "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Moreover, when a federal court is presented with a motion to remand, the court is limited solely to the question of its authority to hear the case pursuant to the removal statute. *See Okot v. Callahan*, 788 F.2d 631, 633 (9th Cir. 1986).

The removal statute provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). There is, however, a "strong presumption" against removal in the first instance. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id*.

"In a removed case, . . . the plaintiff chose a state rather than federal forum. Because the plaintiff instituted the case in state court, '[t]here is a strong presumption that the plaintiff

- 2 -

1  has not claimed a large amount in order to confer jurisdiction on a federal court . . . .'" *Singer*
2  *v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375 (9th Cir. 1997) (quoting *St. Paul*
3  *Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938)). But, "[w]here the complaint
4  does not demand a dollar amount, the removing defendant bears the burden of proving by a
5  preponderance of the evidence that the amount in controversy exceeds [$75,000]." *Id.* at
6  376. "[R]emoval 'cannot be based simply upon conclusory allegations' where the [complaint]
7  is silent" as to the amount of damages the plaintiff seeks. *Id.* at 377 (quoting *Allen v. R&H*
8  *Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). However, the inquiry into the amount
9  in controversy is not confined to the face of the complaint. *Valdez v. Allstate Ins. Co.*, 372
10 F.3d 1115, 1117 (9th Cir. 2004).

**III. Analysis**

Plaintiff has not demanded a dollar amount in her complaint. Accordingly, it is Defendant's burden to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Singer*, 116 F.3d at 376. This requires that Defendant submit evidence to show it is more likely than not that the amount in controversy exceeds $75,000. Defendant may submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal, but may not rely upon conclusory allegations. *Valdez*, 372 F.3d at 1117.

Evidence submitted by Defendant to prove that the amount in controversy exceeds $75,000 includes: an affidavit from Cary Geist, Disability Benefits Analyst at Standard Ins. Co., stating that the amount of alleged past benefits is $3,214.95 and the amount of alleged future benefits is $64,152.62 (Doc. #1, Ex. 2); an affidavit from Defendant's counsel stating that attorney's fees will "push the amount in controversy well above $75,000" (Doc. #1, Ex. 3); and citations to analogous District Court cases where punitive damages were awarded.

It is the opinion of the Court that Defendant has adequately demonstrated that the $75,000 amount in controversy requirement is met in this case. The affidavit of Cary Geist establishes that the actual damages for past and future benefits total $67,367.57 (Doc. #1, Ex.

2). Plaintiff does not dispute this evidence (Doc. #11 at 4; Doc. #14 at 2). Defendant's evidence regarding attorney's fees is too speculative for that claim to be part of the amount in controversy in this case. Defendant makes up the remaining amount by presenting evidence that the punitive damages would more likely than not exceed the remaining $7,632.43 and bring the amount in controversy well over the required $75,000.

### A. Attorney's Fees

Defendant correctly asserts that attorney's fees recoverable under law may be included in computing the amount in controversy when an underlying statute authorizes such fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Under Arizona law, attorney's fees for actions arising out of contract, including those incurred pursuing a bad faith action, may be awarded to a successful litigant. *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (D. Ariz. 1981).

In support of its Notice of Removal, Defendant offers an affidavit from its own counsel, Christopher P. Staring. (Doc. #1, Ex. 3). In his affidavit, Staring states that the projected attorney's fees would "unquestionably push the total amount in controversy well above $75,000." *Id.* This statement is not supported by any calculable figures or estimations of billing time and rates for specific litigation tasks. Although Staring's experience in these types of actions is extensive, a statement of mere opinion is nonetheless speculative. *See Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1068 (D. Ariz. 2004). Therefore, the evidence cannot support a finding that the attorney's fees would push the amount in controversy over the required amount.

### B. Punitive Damages

Punitive damages recoverable under law may be included in computing the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Under Arizona law, punitive damages may be awarded in bad faith insurance cases. *Filasky v. Preferred Risk Mut. Ins. Co.*, 734 P.2d 76, 83 (Ariz. 1987). "However, the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement

has been met." *Burk*, 348 F. Supp. 2d at 1069 (citing *Surber v. Reliance Nat'l Indem. Co.*, 110 F.Supp.2d 1227, 1232 (N.D. Cal. 2000)).

To show that the claim for punitive damages establishes that it is more likely than not that the amount in controversy exceeds $75,000, Defendant must present appropriate evidence. *Id.* (citing *McCaa v. Mass. Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1149 (D. Nev. 2004)). Such evidence may include jury verdicts in analogous cases. *Id.* (citing *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Ansley v. Metro. Life Ins. Co.*, 215 F.R.D. 575, 578 (D. Ariz. 2003)).

In its Notice of Removal, Defendant cites two cases in support of its contention that Plaintiff's claim for punitive damages will more likely than not push the amount in controversy over $75,000 (Doc. #1 at 6-8). Defendant first cites *Leavey v. UNUM/Provident Corp.*, 2006 WL 1515999 (D. Ariz. May, 26, 2006). The Court takes judicial notice of the docket of *Leavey*, No. CV-02-2281-PHX-SMM as evidence. The facts and allegations in *Leavey* are substantially analogous to those in this case.[1] In *Leavey*, the plaintiff was denied continued benefits by his long-term disability insurer and the plaintiff sued for breach of contract and bad faith. 2006 WL 1515999 at 1. The plaintiff was awarded $809,028 in actual damages for future benefits. *Id.* The jury initially awarded Leavey $15 million in punitive damages, but the trial judge remitted that award to $3 million. *Id.* at 17 (remittitur upheld on appeal). That reduced figure represents more than a 3 to 1 ratio of punitive to actual damages.

Defendant also cites *Ace v. Aetna Life Ins. Co.*, 40 F. Sup. 2d 1125 (D. Alaska 1999). *Aetna* is another case in which a plaintiff sued her insurer for denying a claim for long-term

---

[1] Plaintiff points out that there are facts in *Leavey* that distinguish it from the present case (Doc. #11 at 5). However, "[t]he fact that the cited cases involve distinguishable facts is not dispositive." *Simmons*, 209 F. Supp. 2d at 1033. The facts are analogous enough to establish that there is significant potential for a punitive damages award in long-term disability cases.

disability benefits. *Id.* In *Ace*, the jury awarded actual damages of $27,009 for the denied benefits and punitive damages of $16.5 million. *Id.* On appeal, the punitive award was reduced to the state statutory maximum of $950,000. *Id.* at 1136. This resulted in a ratio of punitive to actual damages of approximately 35 to 1.

In the present case, even an award of punitive damages equal to a ratio of 1 to 1 would more than make up the remaining $7,632.43 necessary to qualify the amount in controversy for federal jurisdiction. Therefore, if punitive damages were awarded they would more likely than not push the amount in controversy well over $75,000.

**IV. Conclusion**

Because Defendant has shown that the claimed actual damages in this case total $67,367.57 and that a punitive damages award would likely exceed $7,632.43, Defendant has satisfied its burden of proving that the amount in controversy more likely than not exceeds $75,000.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand (Doc. # 11) is **DENIED**.

DATED this 17th day of March, 2010.

_James A. Teilborg_
United States District Judge